■ FRANK EYEDENT et al., Appellants, v VICKERS MANAGEMENT et al., Respondents, and DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT OF THE CITY OF NEW YORK, Appellant.—Order of the Appellate Term (Stanley Parness, J. P., and Stanley Ostrau, J.; Jawn A. Sandifer, J., dissenting), Supreme Court, First Department, entered March 21, 1988, which reversed an order of Civil Court, New York County (Lewis R. Friedman, H.C.J.), entered October 31, 1986, and denied the motion of petitioners tenants for an order compelling respondents landlords to correct violations at certain premises, is unanimously reversed, on the law and on the facts, and Appellate Term's order is vacated, Civil Court's order, which, after a nonjury trial, directed respondents to provide for expeditious repair of the premises, is reinstated, and the matter is remanded to Housing Court for appropriate relief, without costs.

Mr. Joseph Cohen (landlord), on October 22, 1985, purchased, for approximately $394,000, residential premises (premises) located at 41-43 Avenue B, between East 3rd and 4th Streets, New York County. These premises consisted of two adjacent buildings, and contained 20 apartments.

At the time of closing, the landlord paid $63,000 in cash, assumed the balance of the existing $50,000 mortgage, and the seller took back a purchase-money mortgage of approximately $284,000, at an interest rate of 10%.

The premises were managed by Mr. Stanley Vickers and Vickers Management.

Thereafter, on April 28, 1986, the New York City Department of Buildings (DOB) issued an order to vacate the premises due to, *inter alia,* the collapse of a rear wall. Subsequently, on May 2, 1986, the New York City Department of Housing Preservation and Development (HPD) issued repair/vacate orders, since dangerous conditions existed at the premises. Following the HPD order, on May 19, 1986, a DOB inspection indicated the premises were vacant, and it appeared that they were marked for demolition.

Prior to the vacate order, 16 tenants, pursuant to rent-stabilized leases, resided in the premises.

Since the landlord failed to make the repairs identified in the vacate orders, mentioned *supra,* on May 21, 1986, several of the displaced tenants (petitioners) instituted the instant proceeding in the Housing Part of Civil Court, New York County, against Messrs. Cohen and Vickers and Vickers Management (landlords). Thereafter, the HPD was joined as a party respondent. Subsequently, petitioners moved for, *inter alia,* injunctive relief which would direct landlords to repair the premises.

After issue was joined, a nonjury trial commenced, on July 10, 1986, before a Housing Court Judge. During this trial, which ended on August 13, 1986, both the petitioners and landlords presented evidence, which included the estimated cost to repair the premises. Following that trial, by order entered October 31, 1986, the Housing Court granted the petitioners' motion and, *inter alia,* directed the landlords to provide for the expeditious repair of the premises and restore them to habitable condition *(Eyedent v Vickers Mgt.,* 134 Misc 2d 481 [Civ Ct, NY County 1986]).

Landlords appealed. By a 2 to 1 vote, Appellate Term reversed the Housing Court *(Eyedent v Vickers Mgt.,* 138 Misc 2d 459 [App Term, 1st Dept 1988]). In an order entered March 21, 1988, Appellate Term denied the petitioners' motion, without prejudice to petitioners' right, if so advised, to maintain a proceeding for such relief as may be appropriate to compensate them for the loss of their tenancies.

Subsequently, by order entered April 27, 1988, Appellate Term granted petitioners and respondent HPD leave to appeal to this court. We note in passing that HPD, although a respondent, has supported the position of the petitioners throughout the proceeding.

The trial court, after hearing the testimony, found *(Eyedent v Vickers Mgt.,* 134 Misc 2d 481, 485-486, *supra),* in pertinent part:

"The owners [respondents] assert that the building *loses* nearly $16,000 per year if fully rented at the current rent levels. Surely it would be worth substantially more vacant. * * *

"The court credits the tenants' [petitioners'] expert's valuation of the cost of repair. The structural work will cost $170,000 and the interior work $150,000. The tenants' witness

was credible and explained the conditions needing repair * * *. The witnesses for the owners testified in a conclusionary fashion which lent little to their credibility. * * *

"Further the proof is strongly susceptible to the conclusion that the owners [respondents] had no interest in the physical condition of the property when they purchased it. No engineer's inspection was ordered even though sidewalk repair liens were examined. The owners' [respondents'] conduct is consistent with a desire to allow the building to deteriorate to the point where it would fall down, as it did.

"The owners' attempt to show that the operation of the building would not be profitable if the repairs were done was unconvincing. * * *

"The court finds that the petitioners are entitled to an order to correct the conditions".

We held in *829 Seventh Ave. Co. v Reider* (111 AD2d 670, 672 [1st Dept 1985]) that "it is a basic principle of appellate review that the findings of the nisi prius court, which alone has had the opportunity to hear and observe the witnesses and their demeanor on the stand, are to be accorded the greatest respect and are not to be disturbed". After reviewing the trial court record before us, we find no justification to depart from this "basic principle of appellate review" quoted *supra.*

The Court of Appeals held in *Park W. Mgt. Co. v Mitchell* (47 NY2d 316, 327 [1979], *cert denied* 444 US 992 [1980]) that a landlord of a multiple dwelling has the obligation to maintain residential premises "fit for human occupation * * * throughout the lease term". Furthermore, this obligation of a landlord to keep residential property in good repair is imposed by statute (Multiple Dwelling Law § 78; Administrative Code of City of New York § 27-2005).

Even though the instant premises have been evacuated, pursuant to vacate orders which were issued to protect the public safety, we find that those vacate orders did not terminate the petitioners' tenancies *(Matter of Department of Bldgs. [Philco Realty Corp.],* 14 NY2d 291, 302, n 2 [1964]; *Garber v Egger,* 132 NYS2d 371 [App Term, 1st Dept 1954]). Evidence that such vacate orders are not intended to terminate tenancies is found in Administrative Code § 27-2140 (c) (1), which states that such vacate "order shall require that the owner correct the conditions which render the dwelling or part thereof unfit for human habitation".

Since respondent, Mr. Cohen, has acquired, in addition to

the premises, the properties located at 45-47, 49, 51 and 53 Avenue B, between East 3rd and 4th Streets, with the exception of a single lot on the corner of that block, we can conclude that these landlords are experienced real estate operators. In view of the landlords' business acumen in this field, we find that the alleged economic hardship the landlords now face in making the repairs required by the trial court order was self-inflicted, since the facts adduced at the trial indicate that the need to make such repairs could have been anticipated *(Matter of National Merritt v Weist,* 41 NY2d 438, 442 [1977]). Although these premises were more than 100 years old, the landlords, as mentioned *supra,* did not even order an engineer's inspection before they purchased it.

After our review of the Housing Court trial transcript, we find, as did the trial court, "[t]he record here is barren of proof of the current value of the premises * * *. Accordingly, the consequences of the repair of the damage cannot be evaluated on an economic basis" *(Eyedent v Vickers Mgt.,* 134 Misc 2d 481, 485-486, *supra).*

Since the landlords chose not to present evidence of the economic value of the premises before the trial court, they have not proved that the cost of the repairs would constitute an unconstitutional taking of their property, in violation of the Fifth and Fourteenth Amendments to the US Constitution *(Pennell v San Jose,* 485 US 1, 108 S Ct 849 [1988]; *de St. Aubin v Flacke,* 68 NY2d 66, 76-77 [1986]).

Subsequent to the trial court order, and while the matter was pending in Appellate Term, a fire destroyed the premises and, as a result, agencies of the City of New York demolished them.

Although the premises have been demolished, we do not find the appeal moot, since the issue herein, that of the demolition of premises after a court order to repair has been entered, is likely to be presented again *(Matter of Hearst Corp. v Clyne,* 50 NY2d 707, 714-715 [1980]).

To hold otherwise, would be an incentive for unscrupulous owners to permit their properties to decay beyond the point of reasonable rehabilitation, and thus obtain an unwarranted windfall.

Based upon our analysis *supra,* we find that Appellate Term erred.

Accordingly, we reverse, vacate Appellate Term's order, reinstate Civil Court's order, and remand the matter to the Housing Court for appropriate relief.

We have considered the other points raised on appeal, and find them to be without merit. Concur—Murphy, P. J., Sullivan, Ross, Rosenberger and Wallach, JJ.